Slip Op. 19-158

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| S.C. JOHNSON & SON, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant. | Before: Jennifer Choe-Groves, Judge<br><br>Court No. 14-00184 |

## OPINION

[At the conclusion of a bench trial, holding that Ziploc® brand reclosable sandwich bags are classified under HTSUS Heading 3923.]

Dated: December 16, 2019

Michael E. Roll, Pisani & Roll, LLP, of Los Angeles, CA, argued for Plaintiff S.C. Johnson & Son, Inc. With him on the brief was Brett Ian Harris.

Monica P. Triana, Trial Attorney, International Trade Field Office, U.S. Department of Justice, of New York, N.Y., argued for Defendant United States. On the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, Amy M. Rubin, Assistant Director, and Justin R. Miller, Attorney-In-Charge, International Trade Field Office. Of counsel was Sheryl A. French, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, New York, N.Y. Jamie L. Shookman, U.S. Department of Justice, of New York, N.Y., also appeared.

Choe-Groves, Judge: The court held a bench trial to determine the classification under

the Harmonized Tariff Schedule of the United States ("HTSUS") (2013) of "Ziploc®" brand

reclosable plastic bags marketed by S.C. Johnson & Son, Inc. ("Plaintiff" or "S.C. Johnson").

The court denied summary judgment previously based on the existence of genuine issues of

material fact. The parties requested that the court hold a bench trial "on the papers" after

mutually agreeing to admit all documents, deposition transcripts, and reports into evidence.

Pretrial Conference, 2:02:48–2:06:33, Nov. 30, 2018; ECF No. 98 ("Pretrial Conf."); see Pl.'s

Post-Trial Mem. of Law, Mar. 8, 2019, ECF No. 111 ("Pl.'s Br."); Def.'s Written Closing

Statement, Mar. 8, 2019, ECF No. 109 ("Def.'s Br."); USCIT R. 52(a)(1).  Based on the

following findings of fact and conclusions of law, the court concludes that the subject

merchandise are properly classified under HTSUS Heading 3923.

## BACKGROUND

S.C. Johnson entered 1,512 cases of Ziploc® brand reclosable sandwich bags on May 15,

2013.  Entry Summary, Entry No. 231-6143028-9, Packing List, Case File.  At the time of entry,

the subject merchandise were classified under HTSUS Heading 3923.  See Pl.'s Rule 56.3

Statement of Material Facts Not in Dispute, Oct. 31, 2017, ECF No. 63–3 ("Pl.'s Facts") ¶¶ 1–2;

Def.'s Resps. to Pl. S.C. Johnson's Rule 56.3 Statement of Material Facts, Dec. 23, 2017, ECF

No. 73–3 ("Def. Facts Resp.") ¶¶ 1–2; Entry Summary, Entry No. 231-6143028-9, Packing List,

Case File.  Customs liquidated the entry on March 28, 2014.  See Pl.'s Facts ¶ 3; Def. Facts

Resp. ¶ 3; Summons, Aug. 1, 2014, ECF No. 1 ("Summons").  S.C. Johnson filed a protest and

requested accelerated disposition on June 26, 2014.  See Protest No. 2704-14.10192, Case File.

The protest was deemed denied.  19 U.S.C. § 1515(b); see Protest No. 2704-14.10192, Case File;

see also Summons 1.[1]

Plaintiff initiated this action on August 1, 2014.  Summons 1; Compl. ¶ 1.  Defendant

answered on August 7, 2015.  Answer, Aug. 7, 2015, ECF No. 15.  The court granted test case

designation on October 5, 2015.  Order, Oct. 5, 2015, ECF No. 19; see USCIT R. 84 (2015);

---

[1] Customs denied the protest on August 15, 2014.  Id.; but see 19 U.S.C. § 1515(c).

USCIT R. 83(e) (2019).  This action was reassigned.  Order of Reassignment, Jul. 19, 2016, ECF No. 33.

Plaintiff and Defendant filed cross-motions for summary judgment.  Pl.'s Mot. for Summ. J., Nov. 11, 2017, ECF No. 63; Def.'s Cross-Mot. for Summary J., Dec. 22, 2017, ECF No. 71; S.C. Johnson & Son, Inc. v. United States, 42 CIT __ , 355 F. Supp. 3d 1294 (2018) ("S.C. Johnson I").  In S.C. Johnson I, the court determined that HTSUS Heading 3923 was a principle use provision and HTSUS Heading 3924 was an *eo nomine* provision.  Id. at 1300–01.  Because there were genuine issues of material fact as to whether the subject merchandise fell within the terms of the HTSUS headings at issue, the court denied both motions for summary judgment and deferred classification of the subject merchandise until the conclusion of trial.  Id. at 1301.

Pretrial conferences were held on September 25, 2018, November 14, 2018, and November 30, 2018.  Pre-Trial Telephone Conference, Sept. 25, 2018, ECF No. 88; Pre-Trial Teleconference, Nov. 14, 2018, ECF No. 94; Telephone Conference, Nov. 30, 2018; ECF No. 98.  The parties agreed to hold a bench trial on the papers, stipulating to the admission of all documents, deposition transcripts, and reports into evidence.  Pretrial Conf. at 2:02:48–2:06:33.  The court directed the Parties to file written closing arguments and a joint appendix.  Order, Nov. 30, 2018, ECF No. 98.  The Parties filed a joint appendix.  Confidential J.A., Jan. 11, 2019, ECF No. 100.

Defendant filed a consent motion to stay this case following the lapse in appropriations for the U.S. Department of Justice.  Consent Mot. to Stay, Jan. 16, 2019, ECF No. 101.  The court granted the motion to stay.  Order, Jan. 18, 2019, ECF No. 102.  The court entered a scheduling order following restoration of appropriations for the U.S. Department of Justice.

Scheduling Order, Feb. 4, 2019, ECF No. 104.  The Parties filed written closing arguments.  Pl.'s

Br.; Def.'s Br.  The Parties filed supplemental briefing.  Pl.'s Br. Regarding Effect of <u>Ford Motor</u>

<u>Co. v. United States</u>, Ct. No. 2018-1018, 2019 WL 2399346 (Fed. Cir. June 7, 2019), Jun. 18,

2019, ECF No. 117 ("Pl.'s Suppl. Br."); Def.'s Resp. to the Ct.'s June 11, 2019 Ltr., Jun. 20,

2019, ECF No. 119.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (2012).  The court reviews

classification cases on the basis of the record made before the court.  28 U.S.C. § 2640(a).

## FINDINGS OF FACT

After holding a bench trial, the court makes the following findings of fact:

1. The subject merchandise are plastic bags that measure six and one-half inches by five and

   seven-eighths inches and are approximately one millimeter thick.  Pl.'s Facts ¶ 10; Def.'s

   Facts Resp. ¶ 10; Product Specifications, Ex. 3, Dec. 23, 2017, ECF No. 73–1.

2. The subject merchandise have an interior space that can accommodate relatively small

   items.  <u>See</u> Def.'s Facts ¶ 5; Pl.'s Facts ¶¶ 48–51; Price Dep. 56:9–58:10, Feb. 2, 2017,

   J.A. 4 ("Price Dep.").

3. Each bag has a single zipper closure.  <u>See</u> Def.'s Facts ¶ 7; Price Dep. 56:9–58:10,

   78:17–24; Horn Dep. 40:3–7, Feb. 2, 2017, J.A. 6 ("Horn Dep.").

4. The zipper closure seals the bag using the inner locking of the two profiles.  <u>See</u> Def.'s

   Facts ¶ 8, Price Dep. 11:9–17.

5.  S.C. Johnson refers to the reclosable plastic bags of the size, shape, and thickness in this action as "sandwich" bags.  See Pl.'s Facts ¶ 1; Def.'s Facts ¶ 10; Entry Summary, Entry No. 231-6143028-9, Waybill, Case File.

6.  The subject merchandise are manufactured from polyethylene resin pellets that are used in an extrusion process to form both the film and plastic "zipper" seals on the bags.  Pl.'s Facts ¶¶ 10, 42; Def.'s Facts Resp. ¶¶, 10, 42; Price Dep. 15:21–16:2, 31:17–32:6.

7.  The subject merchandise are manufactured in Thailand.  See Pl.'s Facts ¶ 11; Def.'s Facts Resp. ¶ 11; Patvibul Dep. 26:5–11, Jul. 19, 2017, J.A. 1.

8.  The subject merchandise are imported into the United States in bulk boxes, containing 40 individual groups of 125 bags secured with a rubber band.  See Pl.'s Facts ¶ 11; Def.'s Facts Resp. ¶ 11.

9.  The groups of 125 bags are packaged for retail sale in the United States following importation.  See Pl.'s Facts ¶ 11; Def.'s Facts Resp. ¶ 11.

10. The rubber bands used to secure the bundles of bags are required to be tested and approved for food contact.  See Pl.'s Facts ¶ 20; Def.'s Facts Resp. ¶ 20; Price Dep. 36:12–18.

11. The bags are tested to confirm the absence of the chemical Bisphenol A ("BPA").  See Pl.'s Facts ¶ 14; Def.'s Facts Resp. ¶ 14; Price Dep. 14:16–20; 59:21–60:9.

12. S.C. Johnson requires its manufacturers to obtain Kosher certification.  See Pl. Facts ¶ 19; Def. Facts Resp. ¶ 19; Price Dep. 58:25–59:20.

13. S.C. Johnson tests Ziploc® sandwich bags to be compatible with food contact.  Price Dep., Ex. 13, Appx001437, J.A. 68.

14. Ziploc® brand reclosable plastic bags are sold in retail outlets, including warehouse stores, grocery stores, drug stores, discount stores, and via e-commerce.  See Def.'s Facts ¶ 11, Pl.'s Facts Resp. ¶ 11; Horn Dep. 18:20–19:12, 22:23–24:24.

15. Retailers determine the location in the store where Ziploc® bags are sold.  See Horn Dep. 40:24–41:20.

16. Consumers use sandwich bags to pack and store food items.  Bigna Dep. 10:2–12, Feb. 3, 2017, J.A. 15 ("Bigna Dep.").

17. Consumers use sandwich bags to take food items out of the home.  Bigna Dep. 10:13–15.

18. Consumers use sandwich bags to store food items inside of the home.  Bigna Dep. 10:15–20.

19. S.C. Johnson refers to "snack" and "sandwich" bags as "transport" bags.  Bigna Dep., 35:1–9.

20. Consumer expectations for a sandwich bag and a freezer bag are different.  Bigna Dep. 46:3–4.

21. The functions of a plastic sandwich bag include: (a) to protect contents from spoilage (to keep food fresh), from drying out or from getting wet, (b) to contain messy things, (c) to transport things, (d) to organize things and keep multiples together, and (e) to facilitate portion control.  See Project Andy, 000742, J.A. 16.

22. Storage locations for sandwich bags include: lunchboxes, purses, and backpacks.  See Bag/Type Profiling, Appx000788, J.A. 18.

23. Sandwich bags are used to pack a snack or lunch.  <u>See</u> Bag/Type Profiling, Appx000789, J.A. 18.

24. The majority of sandwich bag users keep sandwich bags in the kitchen.  Bag/Type Profiling, Appx000795, J.A. 18.

25. A study finds that "[s]andwich bags tend to be used to store food consumed away from home, which aligns with the commonly stored items in these bags."  Bag/Type Profiling, Appx000799, J.A. 18.

26. A study finds that sandwich bags are stored in the refrigerator or freezer in many measured occasions for use.  <u>See</u> Bag/Type Profiling, Appx000797, J.A. 18.

27. A study finds that packing for a meal is the main reason for storing food in snack and sandwich bags.  <u>See</u>, <u>e.g.</u>, Bag/Type Profiling, Appx000801, J.A. 18.

28. The packaging materials for the subject merchandise state: "[p]ack your bottles in Ziploc® Sandwich bags to help prevent any surprise leaks" and "[p]ut [g]oodies like candy, cookies, or desserts in a Ziploc® Sandwich bag, add a bow, and give it as a small gift."  Sample Packaging Material, Appx000577, J.A. 7.

## CONCLUSIONS OF LAW

**I.     Legal Framework**

Classification of goods under the HTSUS is a two-step process that involves: (1) determining the proper meaning of terms in the tariff provisions, and (2) determining whether the goods fall within those terms.  <u>Kalle USA, Inc. v. United States</u>, 923 F.3d 991, 995 (Fed. Cir. 2019).  The proper meaning of terms of the tariff provisions is a question of law.  <u>Rubies Costume Co. v. United States</u>, 922 F.3d 1337, 1342 (Fed. Cir. 2019).  Whether the subject

merchandise fall within the description of a tariff provision is a question of fact.  <u>Id.</u>  When there is no dispute as to the nature of the merchandise, the two-step classification analysis collapses entirely into a question of law.  <u>Gerson Co. v. United States</u>, 898 F.3d 1232, 1235 (Fed. Cir. 2018).

Customs is afforded a statutory presumption of correctness in classifying merchandise under the HTSUS, but this presumption does not apply to pure questions of law.  28 U.S.C. § 2639(a)(1); <u>see</u> <u>Universal Elecs. Inc. v. United States</u>, 112 F.3d 488, 492 (Fed. Cir. 1997).  The court has an independent responsibility to decide the legal issue of the proper meaning and scope of HTSUS terms.  <u>Warner-Lambert Co. v. United States</u>, 407 F.3d 1207, 1209 (Fed. Cir. 2005). It is the "court's duty is to find the *correct* result, by whatever procedure is best suited to the case at hand." <u>Jarvis Clark Co. v. United States</u>, 733 F.2d 873, 878 (Fed. Cir. 1984) (emphasis in original).

The classification of merchandise under the HTSUS is governed by the General Rules of Interpretation ("GRI") and, if applicable, the Additional U.S. Rules of Interpretation ("ARI"), which are applied in numerical order.  <u>Rubies Costume Co.</u>, 922 F.3d at 1342.  Under GRI 1, "classification shall be determined according to the terms of the headings and any relative section or chapter notes."  GRI 1.  Absent contrary legislative intent, HTSUS terms are to be construed according to their common and popular meaning.  <u>Baxter Healthcare Corp. v. United States</u>, 182 F.3d 1333, 1337 (Fed. Cir. 1999) (internal quotations omitted).

In construing the terms of the headings, the court may rely upon its own understanding of the terms used and may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources.  <u>Carl Zeiss, Inc. v. United States</u>, 195 F.3d 1375, 1379 (Fed. Cir.

1999).  The court may also consult the World Customs Organization's Harmonized Commodity

Description and Coding System Explanatory Notes ("Explanatory Notes"), which are not legally

binding or dispositive, but provide a commentary on the scope of each heading of the

Harmonized System and are generally indicative of proper interpretation of the various

provisions.  Kahrs Int'l, Inc. v. United States, 713 F.3d 640, 645 (Fed. Cir. 2013); H.R. Rep. No.

100–576, 549 (1988), reprinted in 1988 U.S.C.C.A.N. 1547, 1582; see also E.T. Horn Co. v.

United States, 367 F.3d 1326, 1329 (Fed. Cir. 2004).  Tariff terms are defined according to the

language of the headings, the relevant section and chapter notes, the Explanatory Notes,

available lexicographic sources, and other reliable sources of information.  See Kahrs Int'l, Inc.,

713 F.3d at 644–45.

## II.        Competing Tariff Provisions

The Government maintains that Customs classified the imported Ziploc plastic bags

properly under HTSUS subheading 3923.21.00.  See Def.'s Br. 10–11.  The tariff provision reads

as follows:

3923    Articles for the conveyance or packing of goods, of plastics; stoppers, lids, caps
        and other closures, of plastics:

                       Sacks and bags (including cones):
3923.21.00             Of polymers of ethylene

HTSUS subheading 3923.21.00.

Plaintiff contends that the subject merchandise are classifiable under HTSUS subheading

3924.90.56.  Pl.'s Br. 2, 7.  The tariff provision covers:

3924    Tableware, kitchenware, other household articles and hygienic or toilet articles, of
        plastics:

3924.90                Other:

3924.90.56              Other

HTSUS subheading 3924.90.56.  Plaintiff claims further that the subject merchandise is eligible

for duty-free treatment under the Generalized System of Preferences ("GSP") if classified under

HTSUS subheading 3924.90.56.  See Pl.'s Br. 2, 16–24.

## III.    Analysis of the Tariff Terms

        In S.C. Johnson I, the court assessed whether HTSUS Headings 3923 and 3924 are *eo*

*nomine* or use provisions.  42 CIT at __, 335 F. Supp. 3d at 1299–1301; see Schlumberger Tech.

Corp., 845 F.3d at 1164.  An *eo nomine* provision describes articles by specific names.  See id.

A use provision, by contrast, classifies articles based on their principal or actual use.  See id.; see

also R.T. Foods, Inc. v. United States, 757 F.3d 1349, 1354–55 (Fed. Cir. 2014).  ARI 1(a),

which governs use provisions, provides that:

> In the absence of special language or context which otherwise requires-- (a) a tariff
> classification controlled by use (other than actual use) is to be determined in
> accordance with the use in the United States at, or immediately prior to, the date of
> importation, of goods of that class or kind to which the imported goods belong, and
> the controlling use is the principal use.

ARI 1(a).  In this context, principal use has been defined as the use that exceeds any other single

use.  Aromont USA, Inc. v. United States, 671 F.3d 1310, 1312 (Fed. Cir. 2012).

        The court first considered the meaning and scope of HTSUS Heading 3923, "articles for

the conveyance or packing of goods."  HTSUS Heading 3923.  "Conveyance" is defined as "a

means of carrying or transporting something."  Webster's Third New International Dictionary

499 (unabr. 1993).  "Convey" is defined as "to bear from one place to another."  Id.  "Packing" is

defined as "to process and put into containers in order to preserve, transport, or sell."  The

American Heritage Dictionary of the English Language 1261 (4th ed. 2000); see also Webster's

Third New International Dictionary 1618 (unabr. 1993) ("[T]he act or process of preparing goods

for shipment or storage.").  Because the terms of the heading contemplate a specific use (i.e.,

"conveyance or packing of goods"), this court concluded that HTSUS Heading 3923 is a

principal use provision encompassing goods of plastic used to carry or to transport other goods

of any kind.  42 CIT at __, 335 F. Supp. 3d at 1299–1300.

Eo nomine tariff headings describe "the subject merchandise by name, not by use."

Kahrs Int'l, Inc., 713 F.3d at 645–46 (citing Clarendon Mktg., Inc. v. United States, 144 F.3d

1464, 1467 (Fed. Cir. 1998)).  In S.C. Johnson I, the court's inquiry focused on the meaning of

"household articles . . . of plastics."  HTSUS Heading 3924.  The phrase did not suggest a type of

use, and therefore the court declined to read one into it.  See id. at 646 (stating that the court

"should not read a use limitation into an eo nomine provision unless the name itself inherently

suggests a type of use") (citing Carl Zeiss, Inc., 195 F.3d at 1379).  The court continues to

conclude that HTSUS Heading 3924 is an eo nomine provision, not a principal use provision.

In S.C. Johnson I, the court examined the tariff terms "household articles."  42 CIT at __,

335 F. Supp. 3d at 1300–02; HTSUS Heading 3924.  "Household" was defined as "the

maintaining of a house," "household goods and chattels," "a domestic establishment," or "of or

relating to a household."  42 CIT at __, 335 F. Supp. 3d at 1300–02 (citing Webster's Third New

International Dictionary 1096 (unabr. 1993).  "Article" was defined as an "individual thing or

element of a class; a particular object or item."  42 CIT at __, 335 F. Supp. 3d at 1300–02 (citing

The American Heritage Dictionary of the English Language 101 (4th ed. 2000)).

The Explanatory Note to HTSUS Heading 3924 provided further guidance for the court's

analysis.  The Explanatory Note provided, in relevant part: "[t]his heading covers the following

articles of plastics: . . . (C) Other household articles such as ash trays, hot water bottles,

matchbox holders, dustbins, buckets, watering cans, food storage containers, curtains, drapes,

table covers and fitted furniture dust-covers (slipovers)."  Explanatory Note 39.24.  The court

found the reference in the Explanatory Note to "other household articles" helpful in defining the

broad scope of the tariff terms, as the listed articles are all goods commonly found in the home.

42 CIT at __, 335 F. Supp. 3d at 1300–02.  The court concluded that the plain meaning of the

tariff terms in HTSUS Heading 3924 was plastic goods of or relating to the house or household.

Id.

　　　　S.C. Johnson contends that HTSUS Heading 3924 includes, but is not limited to,

"household containers for foodstuffs."  Pl.'s Br. at 4, n.3.  In S.C. Johnson I, the court discussed

SGI, Inc. v. United States, which held that the portable soft-sided vinyl insulated coolers at issue

were properly classifiable under HTSUS subheading 3924.10.50.  S.C. Johnson I, 42 CIT at __,

335 F. Supp. 3d at 1301; SGI, Inc.,122 F.3d 1468, 1472–73 (Fed. Cir. 1997).  In SGI, Inc., the

U.S. Court of Appeals for the Federal Circuit analyzed the listed exemplars for HTSUS

subheading 3924.10.  122 F.3d at 1472–73.  Subheading 3924.10 included "[t]ableware and

kitchenware: Salt, pepper, mustard and ketchup dispensers and similar dispensers," which the

court read as encompassing "various household containers for foodstuffs."  Id. at 1473.  The

SGI, Inc. court's reasoning concentrated on the terms "tableware and kitchenware" at the six-

digit level of the tariff heading, whereas here, the court's inquiry concerned the four-digit level

of the tariff heading and focuses on the terms "household articles."  HTSUS Heading 3924.

While the court recognized that household articles may include food containers, the court

determined that HTSUS Heading 3924 was not so constrained.  S.C. Johnson I, 42 CIT at __,

335 F. Supp. 3d at 1301.

The court continues to conclude that based on the plain language of the provision,

HTSUS Heading 3924 is an *eo nomine* provision that encompasses plastic goods of or relating to

the house or household.

## IV.  Classification

### A.  *Prima Facie* Classification Under HTSUS Heading 3923

The court previously found that HTSUS Heading 3923 is a principal use provision.  S.C.

Johnson I, 42 CIT __, 335 F. Supp. 3d at 1299.  In assessing classification under a principal use

provision, the court determines whether the group of goods are commercially fungible with the

imported goods in order to identify the use that exceeds any other single use.  Dependable

Packaging Sols., Inc. v. United States, 757 F.3d 1374, 1379–80 (Fed. Cir. 2014); Aromont USA,

Inc. v. United States, 671 F.3d 1310, 1312 (Fed. Cir. 2012).  The group of goods at issue under

HTSUS Heading 3923 is goods of plastic used to carry or to transport other goods of any kind.

When analyzing whether the subject merchandise are commercially fungible, the court

considers the Carborundum factors, which are:

> [1] use in the same manner as merchandise which defines the class; [2] the general
> physical characteristics of the merchandise; [3] the economic practicality of so
> using the import; [4] the expectation of the ultimate purchasers; [5] the channels of
> trade in which the merchandise moves; [6] the environment of the sale, such as
> accompanying accessories and the manner in which the merchandise is advertised
> and displayed; and [7] the recognition in the trade of this use.

Aromont USA, Inc., 671 F.3d at 1313 (citing United States v. Carborundum, 63 C.C.P.A. 98,

102, 536 F.2d 373, 377 (1976)).

### 1.  General Physical Characteristics

The subject merchandise consist of plastic bags that measure six and one-half inches by five and seven-eighths inches.  See Pl.'s Facts ¶ 10; Def. Facts Resp. ¶ 10; Product Specifications, Ex. 3, Dec. 23, 2017, ECF No. 73–1.  Each bag has a plastic zipper and an interior space that can accommodate relatively small items.  Def. Facts ¶ 5; Pl.'s Facts ¶¶ 48–51; Price Dep. 56:9–58:10.  The subject merchandise are manufactured from polyethylene resin pellets.  See Price Dep. 15:21–16:2, 31:17–32:6.

The Government contends that the physical characteristics of the subject merchandise, such as the interior space and reclosable seal, indicate that the bags share the same physical characteristics as merchandise that defines the class of articles under HTSUS Heading 3923.  Def.'s Br. 12.  Plaintiff counters that the subject merchandise do not share the general physical characteristics of other bags or containers used for the packaging or conveyance of bulk or commercial goods, and that the subject merchandise are more similar to household articles.  See Pl.'s Br. at 6–7 (incorporating by reference Pl.'s Mem. Law in Support of Pl.'s Mot. for Summ. J., Oct. 31, 2017, ECF Nos. 63–1 & 66–2 ("Pl.'s Mem. Mot. Summ. J.")); see also Pl.'s Mem. Mot. Summ. J. 25–26; 39.

Plaintiff's argument is unavailing.  The Explanatory Notes correlating to Heading 3923 state that: "[t]he articles covered include: . . . [c]ontainers such as boxes, cases, crates, *sacks and bags* (including cones and refuse sacks), casks, cans, carboys, bottles and flasks," and "[s]toppers, lids, caps and other closures."  Explanatory Notes 39.23(a), (c) (emphasis added).[2] There is no dispute that the subject merchandise are bags.  See Def.'s Facts ¶ 10, Pl.'s Resp.

---

[2] All citations to the Explanatory Notes in this opinion are to the 2012 edition.

Facts ¶ 10.  Similar to the articles in the Explanatory Notes, sections 39.23(a) and (c), the subject

merchandise are a form of bag that includes a re-sealable seal.  See Pl.'s Facts ¶ 10; Def. Facts

Resp. ¶ 10.  The physical characteristics of the subject merchandise with an interior space and

reclosable seal are similar to the group of goods of plastic used to carry or to transport other

goods of any kind.  The court concludes that the physical characteristics of the subject

merchandise support *prima facie* classification under HTSUS Heading 3923.

### 2.   Use in the Same Manner as Merchandise Which Defines the Class

The Government contends that the subject merchandise are used for the packing and

transportation of goods, which is consistent with articles that define the class.  Plaintiff argues

that the subject merchandise are not actually used for packaging or conveyance of bulk or

commercial items.  Pl.'s Mem. Mot. Summ. J. 38.

Plaintiff's argument is flawed.  S.C. Johnson's argument relies heavily on the addition of

the terms "bulk or commercial items."  Pl.'s Mem. Mot. Summ. J. 38.  In support of its

argument, Plaintiff cites two administrative rulings by Customs.  Pl.'s Br. at 10 (citing NY

N293539 (Feb. 1, 2018) and N301247 (Nov. 7, 2018)).  Plaintiffs' cited Customs rulings address

proposed classification of goods under HTSUS subheading 3923.90.00, which is a tariff

subheading that is not at issue in this case.  NY N293539 (Feb. 1, 2018); NY N301247 (Nov. 7,

2018), modified, HQ H296920 (May 22, 2019).  The court also notes that Customs rulings are

not binding on the court.  Skaraborg Invest USA, Inc. v. United States, 22 C.I.T. 413, 417

(1998).  The court concludes that these administrative rulings are unpersuasive as to the issue of

whether the subject merchandise are classifiable under HTSUS subheading 3923.21.00.

Despite Plaintiff's arguments, the court notes that the terms "bulk or commercial items" do not appear in HTSUS Heading 3923, HTSUS subheadings 3923.21 or 3923.21.00, or the corollary Explanatory Notes.  Rather, HTSUS Heading 3923 broadly refers to "[a]rticles for the conveyance or packing of goods, of plastics."  HTSUS Heading 3923.  The Explanatory Notes do not support Plaintiff's proposed reading, as the Explanatory Notes state that "[t]his heading covers all articles of plastics commonly used for the packing or conveyance of all kinds of products."  Explanatory Notes 39.23.  The court declines to read a requirement of "bulk or commercial items" into its analysis of HTSUS Heading 3923.

The evidence indicates that the subject merchandise are used to pack and convey other items.  See Bag/Type Profiling, Appx000799, J.A. 18; User Tracking Study, J.A. 57, Appx001092.[3]  The packaging materials list several uses, including that consumers may "[p]ack [their] bottles in Ziploc® Sandwich bags to help prevent any surprise leaks" and "[p]ut [g]oodies like candy, cookies, or desserts in a Ziploc® Sandwich bag, add a bow, and give it as a small gift."  Sample Packaging Material, Appx000577, J.A. 7.  The use of the subject merchandise for packing and conveying items is similar to the use of the group of goods of plastic used to carry or to transport other goods of any kind.  This factor supports *prima facie* classification under HTSUS Heading 3923.

### 3.  Economic Practicality

The Government contends that it is economically practical to use the subject merchandise to transport, carry, or store any items that fit inside the bag.  Def.'s Br. 13.  In support, Defendant argues that the subject merchandise may be purchased for 3.4 cents per bag, which is comparable

---

[3] See also User Tracking Study, J.A. 57, Appx001093 (Indicating that "Ziploc Sandwich Bags are used most commonly for packing snacks and lunches *to take on the go*.")(emphasis added).

to the price of a 1.25 gauge, single zipper reclosable polyethylene bag sold for 1.6 cents per bag.

See id. Plaintiff does not respond directly, but when Plaintiff addresses the factor of economic

practicality in favor of classification under HTSUS Heading 3924, Plaintiff argues that the

pricing of the subject merchandise sandwich bags are comparable to and less than the pricing of

other more durable plastic storage containers. Pl.'s Mem. Mot. Summ. J. 27–28; see also Horn

Dep. 31:7–13. The products compared are the subject merchandise sandwich bags against the

comparison group of goods of plastic used to carry or to transport other goods of any kind. The

court finds that there is insufficient record evidence to establish cross-elasticity of any of the

comparison products, identified by either Plaintiff or Defendant, to determine whether economic

practicality supports *prima facie* classification under HTSUS Heading 3923. The court

concludes that this factor is neutral.

### 4. Expectations of the Ultimate Purchaser

The Government argues that the ultimate purchasers expect to use reclosable plastic bags

for transporting, carrying, or packing food, personal items, merchandise, materials, or other items

that fit within the interior space. Def.'s Br. 14–15. Plaintiff counters that ultimate purchasers do

not expect to use S.C. Johnson's sandwich bags for the packaging or conveyance of bulk or

commercial items, but instead, ultimate purchasers expect to use the sandwich bags in their

homes. Pl.'s Mem. Mot. Summ. J. 39–40; see Pl.'s Br. 6. The evidence supports an inference

that ultimate purchasers expect to use the subject merchandise to convey or pack goods. See

Bag/Type Profiling, Appx000781–Appx000781, J.A. 18.[4] The expectations of the ultimate

---

[4] An S.C. Johnson home storage study finds that sandwich bags are used to store items in a
lunchbox, purse, or backpack, that the place where the contents of the bag are consumed are
"[a]way from home," and that sandwich bags are used "[a]way from home" in a number of use

purchasers to carry or transport items in the sandwich bags are similar to the consumer

expectations for the group of goods of plastic used to carry or to transport other goods of any

kind.  The court concludes that the expectations of the ultimate purchasers support *prima facie*

classification of the subject merchandise under HTSUS Heading 3923.

### 5.   Channels of Trade

Defendant argues that sandwich bags are sold in the same channels of trade as goods

identified in the subheadings of HTSUS Heading 3923 and goods identified in the Explanatory

Notes.  Def.'s Br. 15–16; see also Explanatory Notes 39.23.  By contrast, when Plaintiff

addresses the factor of economic practicality in favor of classification under HTSUS Heading

3924, Plaintiff argues that sandwich bags are sold in the same channels of trade as other

household articles.

Defendant proffers that the sandwich bags are sold at "mass merchants (Walmart, Target,

etc.), warehouse stores (Costco, etc.), grocery stores, drug stores, discount stores, and by certain

e-commerce merchants."  Def.'s Br. 15; see also Horn Dep. 18:13–27:4.  Plaintiff proffers that

the sandwich bags are sold by retailers, including Walmart, Sam's Club, and Costco, for food

storage use and in areas where other food storage containers are sold.  Pl.'s Mem. Mot. Summ. J.

30–31; see also Hollomon Aff. ¶ 8; Appx001156, J.A. 58; Canales Aff. ¶ 8, Jul. 25, 2016,

Appx00160, J.A. 59 ("Canales Aff."); Herrera Aff. ¶ 8, Jul. 25, 2016, Appx00160, J.A. 60

("Herrera Aff.").  Plaintiff contends that certain retailers, such as Costco and Sam's Club, sell

more general types of merchandise.  Pl.'s Mem. Mot. Summ. J. 31.

---

occasions.  Bag/Type Profiling, Appx000788, J.A. 18.  In the same study, individuals report
using sandwich bags to "[t]o pack/transport . . . for a meal" in many use occasions.

The subject merchandise sandwich bags are sold in similar channels of trade as the group of goods of plastic used to carry or to transport other goods of any kind, such as Walmart, Target, Costco, and other retailers.  The court concludes that the evidence supports a determination that the subject merchandise are sold in channels of trade relating to articles for the conveyance or packing of goods.  The court concludes that the channels of trade factor supports a *prima facie* classification of the subject merchandise under HTSUS Heading 3923.

### 6.  Environment of the Sale

In considering the environment of the sale, the court may look to accompanying accessories and the manner in which the merchandise is advertised and displayed.  Aromont USA Inc., 671 F.3d at 1312.  Defendant argues that reclosable plastic bags of similar sizes and shapes are marketed as a means of containing or conveying various goods.  Def.'s Br. 17.  Plaintiff counters that the subject merchandise are not advertised in the same manner or in the same publications as articles used for the packaging or conveyance of bulk or commercial items.  Pl.'s Mem. Mot. Summ. J. 40.

Plaintiff's arguments are unavailing.  The record evidence indicates that sandwich bags are advertised for the packing and transportation of goods.  S.C. Johnson states on the packaging materials for the sandwich bags that the bags may be used as a "[t]ravel [c]ompanion" and for "[g]ift [g]iving."  Sample Packaging Material, Appx000577, J.A. 7.  In a commercial website printout cited by Plaintiff, the bags are advertised for consumers to "[k]eep after school snacks good to go in backpack-ready bags" and to "[p]rep for your camping trip before you hit the road with pre-portioned treats."[5]  Office Depot/Ziploc Printout, Ziploc Sandwich Bags - 5.88" Width

---

[5] Plaintiff challenges the relevancy of Exhibit 10.  See Pl.'s Br. 12.  The court notes that Plaintiff cites to Exhibit 10 in support of its own arguments, and that the Parties agreed that the court

x 6.50" Length - Clear - 1Box – 90 Per Box - Sandwich, Food Item # 725466, Appx000595, J.A.

10, Dec. 20, 2017.  As to the physical location of the sales, S.C. Johnson's Sales Director of the

West Division testified that retailers may display the subject merchandise co-located with

different types of products.  See Horn Dep. 30:20–31:2.  The subject merchandise sandwich bags

are sold in similar environments as the group of goods of plastic used to carry or to transport

other goods of any kind.  The court concludes that the subject merchandise environment of the

sale supports *prima facie* classification under HTSUS Heading 3923.

### 7.  Recognition in the Trade of This Use

The Government argues that the marketing materials for the subject merchandise indicate

that the sandwich bags are recognized in the trade for the conveyance or packing of goods.

Def.'s Br. 17.  Plaintiff counters that the subject merchandise are not recognized in the

marketplace as items that are commercially fungible with articles for the packing or conveyance

of bulk or commercial items.  Pl.'s Mem. Mot. Summ. J. 41.

The court considers whether the subject merchandise are recognized in the trade as

having that particular use or whether the subject merchandise meet certain specifications

recognized in the trade for that particular class of products.  See Aromont USA, Inc., 671 F.3d at

1316.  Defendant does not offer industry specific standards for articles for the conveyance or

packing of goods.  Def.'s Br. 17.  Plaintiff proffers, *inter alia*, three affidavits of S.C. Johnson

employees who state that the subject sandwich bags are not sold to intermediate sellers for the

packaging or conveyance of bulk or commercial items by the intermediate sellers' customers.

See, e.g., Hollomon Aff. ¶ 8; Appx001156, J.A. 58; Canales Aff. ¶ 8; Herrera Aff. ¶ 8.  As the

should consider all of the evidence submitted with the summary judgment motions in classifying
the subject merchandise.  See id. at 5 (citing Appx000595); Order, Nov. 30, 2018, ECF No. 99.

court has previously addressed, HTSUS Heading 3923 does not limit the terms "[a]rticles for the

conveyance or packing of goods" with the phrase "of bulk or commercial items."  See HTSUS

Heading 3923.  The court concludes that the evidence pertaining to this factor is insufficient to

determine how sandwich bags are recognized in the trade.  The court determines that this factor

is neutral as to the *prima facie* classification of the subject merchandise.

### 8.  Conclusion

Because the majority of the Carborundum factors support classification under HTSUS

Heading 3923, the court concludes that the subject merchandise are *prima facie* classifiable

under HTSUS Heading 3923.

### B.  *Prima Facie* Classification Under HTSUS Heading 3924

In S.C. Johnson I, the court determined that HTSUS Heading 3924 is an *eo nomine*

provision.[6]  Plaintiff argues that the subject merchandise are classifiable as other household

articles of HTSUS Heading 3294 because the sandwich bags relate to the house or household.

42 CIT __, 335 F.Supp.3d at 1301.  Plaintiff cites for support, *inter alia*, an Office Depot website

printout for Ziploc sandwich bags, the deposition of Amy Bigna, and an S.C. Johnson-

commissioned study that examined how individuals use Ziploc® bags.  Office Depot/Ziploc

---

[6] Plaintiff requests that the court reconsider the determination that HTSUS Heading 3924 is an *eo nomine* provision.  Pl.'s Br. 2.  The court considered this argument in the motions for summary judgment.  See Pl.'s Mem. Mot. Summ. J. 30; see generally Pl.'s Suppl. Br.  As previously noted by the court, *eo nomine* tariff headings describe "the subject merchandise by name, not by use." Kahrs Int'l, Inc., 713 F.3d at 646.  The court's inquiry focuses on the meaning of "household articles . . . , of plastics."  The phrase does not suggest a type of use, but rather a location in which an article may be found.  See id. (citing Carl Zeiss, 195 F.3d at 1379) (stating that the court "should not read a use limitation into an *eo nomine* provision unless the name itself inherently suggests a type of use").  The court continues to conclude that HTSUS Heading 3924 is an *eo nomine* provision.

Printout, Ziploc Sandwich Bags - 5.88" Width x 6.50" Length - Clear - 1Box – 90 Per Box -

Sandwich, Food Item # 725466, Appx000595, J.A. 10, Dec. 20, 2017; Bigna Dep. 53:1–25

(citing Ex. 24, New Product User Tracking Study, July 2012 Launch Bundle & Base Ziploc

Sandwich Bag); User Tracking Study, Appx001143, J.A. 57.

     The Government counters that the sandwich bags are not classifiable as other household

articles of HTSUS Heading 3924 because the subject merchandise do not fall within the terms

"household articles" and the bags are disposable, in contrast to curtains, drapes, and ashtrays,

which are three durable articles enumerated in section 39.24 of the Explanatory Notes.  Def.'s

Br. 17–19.

     An *eo nomine* provision includes all forms of the named article.  Kahrs Int'l, Inc., 713

F.3d at 646.  As the court has previously discussed, "[h]ousehold" was defined as "the

maintaining of a house," "household goods and chattels," "a domestic establishment," or "of or

relating to a household."  S.C. Johnson I, 42 CIT at __, 335 F. Supp. 3d at 1300–02 (citing

Webster's Third New International Dictionary 1096 (unabr. 1993).  "Article" was defined as an

"individual thing or element of a class; a particular object or item."  S.C. Johnson I, 42 CIT at __,

335 F. Supp. 3d at 1300–02 (citing The American Heritage Dictionary of the English Language

101 (4th ed. 2000)).

     S.C. Johnson's internal study indicates that the sandwich bags can be found in a

household.[7]  The sandwich bags are designed in a manner consistent with household food

storage.  Mr. William Price, an engineer and Development Lead at S.C. Johnson, testified that

---

[7] User Tracking Study, J.A. 57, Appx001093 (Ziploc Sandwich Bags are used most commonly
for storing leftovers in the refrigerator).  An S.C. Johnson study found that a majority of
sandwich bag users kept sandwich bags in the kitchen.  Bag/Type Profiling, Appx000789, J.A.
18.

S.C. Johnson seeks Kosher certification for the sandwich bags and S.C. Johnson tests for the

absence of Bisphenol A in the sandwich bags.  Price Dep. 12:14–13:6, 59:2–60:5.  The

packaging materials state that consumers may "[s]tore mid-day snacks like fresh cut fruits,

veggies, chips or pretzels in Ziploc Sandwich bags."  Sample Packaging Material, Appx000577,

J.A. 10.  Mr. Emiliano Canales, S.C. Johnson's director responsible for the Home Storage

Division, stated that S.C. Johnson's "Home Storage category includes Ziploc® brand sandwich

and snack bags," and that "[t]hese products are sold . . . specifically for household food storage

use by its customers."  Canales Aff. ¶¶ 3, 7.  Cynthia Herrera, the Global Brand Manager for

S.C. Johnson's Home Cleaning Business, also stated that "[t]hese products are sold in the areas

of . . . stores where other household food storage containers are sold."  Herrera Aff. ¶ 7.[8]  The

record supports a finding that the subject merchandise are "of or relating to a household."  See

S.C. Johnson I, 42 CIT at __, 335 F. Supp. 3d at 1300–02.  Because the evidence indicates that

the subject merchandise can be found in the household, the court concludes that the subject

merchandise are *prima facie* classifiable under HTSUS Heading 3924.

### C.  Application of GRI 3

Having concluded that the subject merchandise are *prima facie* classifiable under both

HTSUS Headings 3923 and 3924, the court applies GRI 3, which provides, in relevant part, that:

"[w]hen . . .  goods are, *prima facie*, classifiable under two or more headings, classification shall

be effected as follows: . . . [t]he heading which provides the most specific description shall be

preferred to headings providing a more general description."  GRI 3(a).

---

[8] See also Bag/Type Profiling, Appx000797, J.A. 18 (Identifying that consumers stored sandwich bags in refrigerators or freezers on a number of measured occasions.).

In determining which tariff provision is more specific, the court compares only the language of the headings, and looks to the provision with requirements that are more difficult to satisfy and that describe the article with the greatest degree of accuracy and certainty.  Orlando Food Corp. v. United States, 140 F.3d 1437, 1440–41 (Fed. Cir. 1998).

HTSUS Heading 3923 is a use provision that specifies "the conveyance or packing" of goods.  The subject merchandise must be used in a specific way to satisfy HTSUS Heading 3923, while the *eo nomine* provision of HTSUS Heading 3924 merely describes the article regardless of its use, and therefore HTSUS Heading 3923 has requirements that are more difficult to satisfy and describe the article with a greater degree of accuracy and certainty.[9]

In addition, HTSUS Heading 3923 pertains to "[a]rticles for the conveyance or packing of goods, of plastics; stoppers, lids, caps and other closures, of plastics," whereas HTSUS Heading 3924 encompasses "[t]ableware, kitchenware, other household articles and hygienic or toilet articles, of plastics."  HTSUS Headings 3923, 3924.  The articles described in HTSUS Heading 3924 include a more diverse range of products with a wider range of characteristics than the articles described in HTSUS Heading 3923.

The Explanatory Notes support this reading, as section 39.23 of the Explanatory Notes indicate that the articles covered by HTSUS Heading 3923 include:

(a)  Containers such as boxes, cases, crates, sacks and bags (including cones and refuse sacks), casks, cans, carboys, bottles and flasks. . .

(i)  Cups without handles having the character of containers used for the packing or conveyance of certain foodstuffs, whether or not they have a secondary use as tableware or toilet articles;

---

[9] Even if HTSUS Heading 3924 were to be construed as a use provision, the court would arrive at the same conclusion.  The "conveyance or packing of goods" remains more specific than "[t]ableware, kitchenware, other household articles and hygienic or toilet articles."  HTSUS Headings 3923, 3924.

(ii)  Bottle preforms of plastics. . .

(b)  Spools, cops, bobbins and similar supports, including video or audio cassettes without magnetic tape.

(c)  Stoppers, lids, caps and other closures.

Explanatory Notes 39.23.  By contrast, the corollary Explanatory Notes to HTSUS Heading 3924 include articles such as:

> Tableware such as tea or coffee services, plates, soup tureens, salad bowls, dishes and trays of all kinds, coffee-pots, teapots, sugar bowls, beer mugs, cups, sauce-boats, fruit bowls, cruets, salt cellars, mustard pots, egg-cups, teapot stands, table mats, knife rests, serviette rings, knives, forks and spoons. . . .  Kitchenware such as basins, jelly moulds, kitchen jugs, storage jars, bins and boxes (tea caddies, bread bins, etc.), funnels, ladles, kitchen-type capacity measures and rolling-pins. . . . Other household articles such as ash trays, hot water bottles, matchbox holders, dustbins, buckets, watering cans, food storage containers, curtains, drapes, table covers, and fitted furniture dust-covers (slipovers). . . . [and] Hygienic and toilet articles.

Explanatory Notes 39.24 (A)–(D).  The Explanatory Notes indicate that the range of products intended to be included in HTSUS Heading 3923, such as containers and cassettes, is narrower than the range of products intended to be included in HTSUS Heading 3924, which vary from tableware to toilet articles.  Explanatory Notes 39.23 (a)–(c); Explanatory Notes 39.24 (A)–(D). The court concludes that HTSUS Heading 3923 provides a more specific description than HTSUS Heading 3924.  In accordance with GRI 3, the court concludes that the subject merchandise are classified under HTSUS Heading 3923.

## V.  Generalized System of Preferences Treatment

Because the court concludes that the subject merchandise are classified properly under HTSUS Heading 3923, the court does not reach the issue of whether S.C. Johnson's sandwich bags are eligible for duty-free treatment under the Generalized System of Preferences.

## CONCLUSION

For the foregoing reasons, the court concludes that Plaintiff's plastic bags are classified

under HTSUS subheading 3923.21.00.  Judgment to be entered accordingly.


                                                          /s/ Jennifer Choe-Groves
                                                         Jennifer Choe-Groves, Judge


Dated:   December 16, 2019
            New York, New York